DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
(212) 277-6500 (Telephone)
(212) 277-6501 (Facsimile)
Arnold Gulkowitz, Esq.
Howard Graff, Esq.
Mark S. Fawer, Esq.
Brian E. Goldberg, Esq.

**Proposed counsel for Petra Fund REIT Corp. and Petra Offshore Fund, L.P., debtors and debtors-in-possession**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:**<br><br>**PETRA FUND REIT CORP., et al.,**<br><br>DEBTORS | **CHAPTER 11**<br><br>**CASE NO.**<br><br>**(JOINT ADMINISTRATION REQUESTED)** |

### AFFIDAVIT PURSUANT TO LOCAL RULE 1007-2

Lawrence Shelley, pursuant to 28 U.S.C. § 1746, hereby declares the following under penalty of perjury under the laws of the United States of America to the best of my knowledge, information and/or belief:

1. I am a Vice President and a member of the board of directors of Petra Fund REIT Corp. ("REIT"), a Maryland Corporation with principal place of business in New York State, New York County, which is part of an affiliated group of companies that includes Petra Offshore Fund L.P. ("Offshore Fund", and together with REIT, collectively, the "Debtors"), a Cayman

46365/0001-6870649v2

Islands exempted limited partnership that does business in the State of New York, County of New York. In these capacities, I have knowledge of and experience with the business and financial affairs of the Debtors.

**Local Rule 1007-2(a)(1) – Nature of the Business and Concise Statement of Circumstances Leading to Chapter 11**

**General Background**

2.  The Debtors, together with their affiliates (collectively, "Petra") are in the business of originating, investing in, structuring and trading loans secured by commercial real-estate.

3.  Offshore Fund is an ultimate parent of REIT and substantially all of the assets of Offshore Fund are invested in REIT. REIT is a real-estate investment trust whose ultimate assets include investments in real-estate and real-estate debt instruments.

4.  The extraordinary and unprecedented collapse of the credit and commercial real estate markets has severely impacted Petra causing the mark-to-market value of its assets to plummet. Financing and liquidity which was previously readily available through banks and the capital markets evaporated as banks de-levered and investors withdrew from the market.

5.  This shift severely constrained and essentially ended the market for securitized debt, which had been a crucial source of financing for the commercial real estate market, of which REIT is a participant.

6.  Petra suspended the publication of Net Asset Valuation beginning after the November 2008 valuations because current market conditions make it difficult to accurately reflect the value of REIT's commercial real-estate assets (and render prior valuations, particularly by creditors, likely over-inflated.)

46365/0001-6870649v2

7. As a result of this unprecedented financial crisis, Petra's loan portfolio deteriorated due to the collapse of the market for securitized debt and resulted in insufficient capital to meet the needs of existing owners who need to refinance their current debt.

8. Petra has worked diligently to negotiate with and satisfy its short-term lenders without violating the debt covenants on its long term debt and to maximize value for its investors.

9. For the past several years, Petra has made numerous attempts to negotiate with substantially all of its creditors in an effort to formulate a consensual restructuring. While certain of Petra's creditors were amenable to restructuring discussions and substantial progress was made toward finalizing various proposed transactions, progress was not made respecting other creditors. These negotiations were further complicated because several of Petra's assets are encumbered by liens and/or asserted liens or similar claims.

**KBS Debt**

10. One creditor with whom Petra could not reach resolution was KBS Preferred Holding I, LLC ("KBS").

11. Ultimately, KBS sued Debtors in New York state court to collect on its asserted debt, arising out of an unsecured loan extended to REIT. KBS obtained a judgment on this debt and has begun to commence enforcement proceedings and assert various rights as a judgment creditor.

12. Despite the procedural posture of the KBS transaction, Petra continued to attempt consensual negotiations with KBS, which were unsuccessful.

**REIT and CDO Structure Required Bankruptcy Protection and Led to Filing**

46365/0001-6870649v2

13. An important component of Petra is that its integrated structure qualifies for the tax and other financial benefits available to real estate investment trusts, which includes REIT's direct and indirect ownership of certain equity and debt interests in Petra CRE CDO 2007-1, Ltd. (the "CDO"). Ultimately, the CDO effectively provides financing for a substantial portion of Petra's real estate transactions The CDO, in turn, has several senior noteholders who are primarily substantial financial and similar institutions, which means that this case has broader potential social and societal ramifications.

14. By filing for bankruptcy protection, Debtors hope to implement a restructuring solution that is in the best interests of the Debtors and their estates. To the extent a creditor of the Debtors (all of whom are structurally subordinated to the CDO's senior noteholders) was able to interfere with the REIT qualified structure of the Petra enterprise and/or the CDO, there would be potentially devastating financial consequences for the investors and noteholders in the CDO and the underlying value of the entire enterprise would be substantially diminished, to the ultimate detriment of all involved, including the Debtors and their estates.

15. Moreover, among the pre-bankruptcy restructuring discussions entered into by Petra, REIT and a secured creditor holding a lien on REIT's indirect equity interest in the CDO formulated a deal in principle (set forth on the Plan Support Agreement, attached hereto as Exhibit A), which Debtors believe provides the best hope to generate value for all parties. This proposed transaction requires a bankruptcy filing for its implementation.

16. Below is a description of the other information required by Local Rule 1007-2.

**Local Rule 1007-2(a)(2)**

17. This case was not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

## Local Rule 1007-2(a)(3)

18. To the Debtors' knowledge, no committee was organized prior to the filing of the case (although as noted above, a deal in principle was pre-negotiated with one of the largest creditors in the case, who also has a lien on one of Petra's assets.)

## Local Rule 1007-2 (a)(4)

19. A consolidated list of Debtors' twenty largest unsecured creditors is annexed hereto as Schedule 1. There are fewer than twenty listed because the Debtors have fewer than twenty creditors, even on a consolidated basis. A summary of such creditors' claims as contingent, unliquidated or disputed is included in connection with REIT's separately filed consolidated list of twenty largest unsecured creditors. Additionally, several of the creditors listed are professionals who performed services for the Debtors, some of which fees may be voluntarily written off to the extent required by this Court if such professionals are retained on a post-petition basis. In connection with the proposed engagement, all unsatisfied pre-petition receivables owed to Debtors' general bankruptcy counsel, Dickstein Shapiro LLP, have been voluntarily waived, assuming the retention is approved.

## Local Rule 1007-2 (a)(5)

20. A schedule of the Debtors' secured creditors is annexed hereto as Schedule 2.

## Local Rule 1007-2 (a)(6)

21. A summary of the Debtors' assets and liabilities is annexed hereto as Schedule 3.

## Local Rule 1007-2 (a)(7)

22. The Debtors do not have any publicly held shares of stock, debentures or other securities.

## Local Rule 1007-2 (a)(8)

23. A list of the Debtors' assets held in the possession or custody of any custodian, creditor, public officer, mortgagee, pledgee, secured creditor or agent is annexed hereto as Schedule 4.

**Local Rule 1007-2 (a)(9)**

24. The Debtors operate their businesses from the location of 1370 Avenue of the Americas, New York, NY 10019, but neither is the owner nor the tenant of such location.

**Local Rule 1007-2 (a)(10)**

25. The Debtors' substantial assets and their books and records are located at 1370 Avenue of the Americas, New York, NY 10019. A summary of any assets held by Debtors outside the territorial limits of the United States is annexed as Schedule 5.

**Local Rule 1007-2 (a)(11)**

26. To the best of Debtors' knowledge, no actions are currently pending, but Debtors were both defendants in an action commenced by KBS in New York State Supreme Court, New York County, and a judgment was obtained against both Debtors and creditor enforcement remedies had been commenced.

**Local Rule 1007-2 (a)(12)**

27. The Debtors' senior management consists of Andrew Stone, Kenneth Kornblau, Lawrence Shelley, and Joseph Iacono. Each has been with the Debtors since their formation or nearly so, and each has substantial experience in commercial real estate and real estate finance.

**Local Rule 1007-2 (b)(1)**

28. The estimated payroll of Debtors to employees (exclusive of officers, directors, stockholders and partners) for the thirty days following the filing of the chapter 11 petitions is none, because Debtors have no employees.

**Local Rule 1007-2 (b)(2)**

29. The estimated payment during the thirty days following the Debtors' bankruptcy petitions to the Debtors' partners, directors, officers, etc. is none, and the estimated payment to the Debtors' management company during the thirty days following the Debtors' bankruptcy petitions is also none, although a portion of the pre-petition receivable owed to them constitutes services to be performed during that period, and the Debtor anticipates paying the management company its customary fees for post-petition services as an administrative expense when sufficient funds become available. The Debtors anticipate receiving sufficient funds to pay all administrative expenses, but currently have essentially no cash on hand.

**Local Rule 1007-2 (b)(3)**

30. Annexed as schedule 6 is the estimated schedule of cash receipts and disbursements for the thirty day period following the Debtors' bankruptcy filing, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid (other than professional fees).

Dated: October 20, 2010

By: /s/ Lawrence Shelley
Lawrence Shelley

7

46365/0001-6870649v2

## Schedule 1 – <u>Twenty Largest Unsecured Creditors (Consolidated)</u>

| Name | Address | Contact | Telephone | Amount |
| --- | --- | --- | --- | --- |
| Fried, Frank, Harris, Shriver & Jacobson LLP | One New York Plaza, NY, NY 10004 | Jonathan Mechanic | 212-859-8222 | Unknown |
| Sidley Austin LLP | 787 Seventh Ave., NY, NY 10019 | Renwick Martin | 212-839-5319 | Unknown |
| Schulte Roth & Zabel LLP | 919 Third Ave., NY, NY 10022 | Bruce Cybul | 212-756-2550 | Unknown |
| Proskauer Rose | 1585 Broadway, NY, NY 10036 | David Weinberger | 212-969-3405 | Unknown |
| Winston & Strawn LLP | 200 Park Ave., NY, NY 10166 | Corey Tessler | 212-294-6685 | Unknown |
| Pricewaterhouse Coopers LLP | 300 Madison Ave., NY, NY 10017 | James Guiry | 646-471-3620 | Unknown |
| Petra Capital Management LLC | 1370 Avenue of the Americas, NY, NY 10019 | Richard Perlman | 212-710-3033 | Approximately $ 4.9 MM |
| KBS Preferred Holding I, LLC | c/o KBS Real Estate Investment Trust, 620 Newport Center Drive, Ste. 1300, Newport Beach, CA 92660 | Keith Hall | 310-432-2102 | $ 65,922,650.21 (from judgment) |
| Bear Stearns Funding, Inc. | c/o JP Morgan Chase Bank NA, 270 Park Ave., 6th Flr., NY, NY 10017 | Kunal Singh | 212-834-5467 | Subject of pre-petition pre-negotiated agreement in principle, but subject to updated valuation, paydowns, etc. |

| Name | Address | Contact | Telephone | Amount |
|---|---|---|---|---|
| | | | | (Undersecured) |
| Greenwich Capital Financial Products, Inc. | 600 Steamboat Road, Greenwich, CT 06830 | Lance Haberin | 203-618-2777 | Unknown and disputed |

## Schedule 2 – **Secured Creditors (Consolidated)**

| Name/Address | Amount | Dispute or Re-Valuation |
|---|---|---|
| Bear Stearns Funding, Inc.<br><br>c/o JP Morgan Chase Bank NA, 270 Park Ave., 6th Flr., NY, NY 10017 | (Subject of pre-petition pre-negotiated agreement in principle attached to Affidavit, but subject to updated valuation, paydowns, etc.) | Claim subject to updated valuation and accounting for paydowns from collateral (Undersecured). Counterparty to pre-negotiated deal-in-principle for restructuring. |
| Greenwich Capital Financial Products, Inc.<br><br>600 Steamboat Road, Greenwich, CT 06830 | Unknown | Amount of alleged claim and value of collateral securing such claim, if any, is unknown, contingent and disputed. |

## Schedule 3 – **Assets and Liabilities (Consolidated)**

| **ASSETS** | | |
|---|---|---|
| | Direct and Indirect Debt and Equity Interests in CDO, substantially including the following: Classes F, G, J and K Bonds of Petra CRE CDO 2007-1 Preferred Shares of Petra CRE CDO 2007-1 | De minimis value. |
| | Wholly-owned direct and indirect assets other than CDO interests | Less than $1MM |
| | Cash on hand | De minimis value |
| | Other assets | Approximately $3.75 MM |
| **Liabilities** | | |
| | General trade and other debt | Approximately $50 MM |
| | KBS Debt | $ 65,922,650.21 (from judgment) |
| | Repurchase Obligations | Unknown and disputed |
| | Other | Approximately $5 MM |

Schedule 4 – **Assets in possession of others**

Certain of the Debtors' directly and or indirectly owned debt interests in the CDO are held with Wells Fargo, as Trustee.

Certain of the Debtors' indirectly owned equity interests in the CDO are held with Bear Stearns Funding, Inc. or an affiliate as collateral for a secured claim.

Schedule 5 – **Assets of Debtors held outside territorial limits of United States**

None.

Schedule 6 –

**FOR THE THIRTY DAY PERIOD FOLLOWING THE DEBTORS' BANKRUPTCY FILING, EXPECTED CASH RECEIPTS AND DISBURSEMENTS, NET CASH GAIN OR LOSS, AND OBLIGATIONS AND RECEIVABLES EXPECTED TO ACCRUE BUT REMAIN UNPAID (OTHER THAN PROFESSIONAL FEES)**

Other than professional fees and similar bankruptcy-related administrative expenses, essentially no cash is anticipated to be spent in the next thirty days by the Debtors, and no substantial cash is anticipated to be received (other than possibly procuring post-petition financing to the extent needed due to exigent circumstances prior to subsequently anticipated receipt of funds.)

The only significant payable accruing during this time is the management fee owed to the Debtors' management company, but the payable covering this period has already been included in the consolidated claims on Schedule 1 of this Affidavit.