DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
(212) 277-6500 (Telephone)
(212) 277-6501 (Facsimile)
Arnold Gulkowitz, Esq.
Brian E. Goldberg, Esq.
Shaya M. Berger, Esq.

Counsel for Petra Fund REIT Corp. and Petra Offshore Fund, L.P., debtors and debtors-in-possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>**PETRA FUND REIT CORP., et al.,**<br><br>DEBTORS. | **CHAPTER 11**<br><br>**CASE NO. 10-15500 (SCC)**<br><br><br>**(JOINTLY ADMINISTERED)** |

**PLAN OF REORGANIZATION OF**
**PETRA FUND REIT CORP. AND PETRA OFFSHORE FUND LP**

Dated: New York, New York
February 17, 2011

# Table of Contents

**PAGE**

## Article I
### DEFINITIONS OF TERMS

1.1    Defined Terms .................................................................................................1
1.2    Interpretation, Application of Definitions and Rules of Construction ..........13
1.3    Consistency with Term Sheet ....................................................................13

## Article II
### TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.1    Classification of Administrative and Priority Tax Claims ...........................13
2.2    Treatment of Allowed Administrative Claims ............................................14
2.3    Payment of U.S. Trustee Fees....................................................................14
2.4    Bar Date for Administrative Claims ...........................................................14
2.5    Treatment of Allowed Priority Tax Claims ................................................14

## Article III
### CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    Administrative Claims and Priority Tax Claims are unclassified. For purposes of this Plan, all other Claims and Interests are classified as follows: ................................15
3.2    Class 1 Claims shall consist of the Secured Claims of JPM...........................15
3.3    Class 1A Claims shall consist of the Secured Claims of RBS. ......................15
3.4    Class 2 Claims shall consist of all Other Secured Claims. ...........................15
3.5    Class 3 Claims shall consist of all General Unsecured Claims of Debtors. ...15
3.6    Class 4 Claims shall consist of all Interests in REIT....................................15
3.7    Class 5 Claims shall consist of all Interests in Offshore. .............................15

## Article IV
### TREATMENT OF CLAIMS AND INTERESTS

4.1    Discharge of Claims and Interests ..............................................................15
4.2    Treatment of Class 1 Claims - Secured Claims of JPM ...............................15
4.3    Treatment of Class 1A Claims - Secured Claims of RBS .............................15
4.4    Treatment of Class 2 Claims – Other Secured Claims .................................16
4.5    Treatment of Class 3 General Unsecured Claims of Debtors........................16
4.6    Treatment of Class 4 Interests in REIT ......................................................16
4.7    Treatment of Class 5 – Interests in Offshore ..............................................17

## Article V
### MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    Substantive Consolidation .........................................................................17
5.2    Corporate Action .......................................................................................17
5.3    Liquidation Trustee....................................................................................18
5.4    Powers and Duties of the Liquidation Trustee ...........................................18
5.5    Investments. .............................................................................................19
5.6    Resignation, Death or Removal..................................................................19
5.7    Winding Up Affairs...................................................................................20

DOCSNY-452461v2

5.8    Release of Liens..................................................................................................20
5.9    Preservation of Causes of Action. ......................................................................20
5.10   Assignment of Causes of Action. ......................................................................20
5.11   Injunction.............................................................................................................20
5.12   Post-Confirmation Sale of Assets.......................................................................21
5.13   Auction Procedure. .............................................................................................21

Article VI
LIQUIDATION TRUST
6.1    Transfer by Debtors to Liquidation Trust ..........................................................23
6.2    Ratification ..........................................................................................................23
6.3    Liquidation of Liquidation Trust Assets.............................................................23
6.4    Powers.................................................................................................................23
6.5    Compensation .....................................................................................................23
6.6    Appointment of Successor Liquidation Trustee .................................................23
6.7    Termination of Liquidation Trustee....................................................................23
6.8    Applicability of Securities Law; Restrictions on Transfer .................................24
6.9    Indemnification of Liquidation Trustee..............................................................24

Article VII
PROVISIONS REGARDING THE NEW REIT
7.1    Formation of New REIT Companies and Organization .....................................24
7.2    Equity Structure of New REIT ...........................................................................24
7.3    Transfers to New REIT .......................................................................................25
7.4    REIT Opinion .....................................................................................................25

Article VIII
PROVISIONS REGARDING VOTING
AND DISTRIBUTIONS UNDER THE PLAN
8.1    Voting of Claims and Interests.. .........................................................................26
8.2    Elimination of Vacant Classes ...........................................................................26
8.3    Nonconsensual Confirmation .............................................................................27
8.4    Distribution to the Liquidation Trustee ..............................................................27
8.5    Reserve for Certain Liquidation Trust Expenses................................................27
8.6    Objections to Claims...........................................................................................27
8.7    Litigation of Claims............................................................................................27
8.8    Distribution of Objected Claims.........................................................................27
8.9    Reserves for Disputed Class 3 Claims ...............................................................28
8.10   Unclaimed Property ............................................................................................28
8.11   Withholding Taxes..............................................................................................28
8.12   Fractional Cents or Shares .................................................................................28
8.13   Setoffs.................................................................................................................28

Article IX
UNEXPIRED LEASES AND EXECUTORY CONTRACTS
9.1    Rejection of Unexpired Leases and Executory Contracts ..................................28

DOCSNY-452461v2

9.2     Claims Arising out of Rejection of Unexpired Leases and Executory Contracts..........29

Article X
## EFFECTIVENESS OF THE PLAN

10.1    Conditions Precedent to Effectiveness of the Plan ......................................................30
10.2    Waiver of Conditions..................................................................................................30
10.3    Effect of Failure of Conditions ..................................................................................30

Article XI
## RETENTION OF JURISDICTION

Article XII
## MISCELLANEOUS PROVISIONS

12.1    Pre-Confirmation Modification ..................................................................................30
12.2    Post-Confirmation Immaterial Modification ..............................................................30
12.3    Post-Confirmation Material Modification ..................................................................31
12.4    Withdrawal or Revocation of the Plan........................................................................31
12.5    Payment of Statutory Fees .........................................................................................31
12.6    Role of Committees ...................................................................................................31
12.7    Successors and Assigns .............................................................................................31
12.8    Term of Injunctions or Stays .....................................................................................31
12.9    Injunction Against Interference With Plan .................................................................31
12.10   Releases. ....................................................................................................................31
12.11   Exculpation and Limitation of Liability ....................................................................33
12.12   Injunction Related to Releases and Exculpation ........................................................33
12.13   Retention of Causes of Action/Reservations of Rights ...............................................33
12.14   Governing Law ..........................................................................................................34
12.15   Notices ......................................................................................................................34
12.16   Saturday, Sunday or Legal Holiday............................................................................34
12.17   Section 1146 Exemption............................................................................................34
12.18   Severability ...............................................................................................................35
12.19   Headings ...................................................................................................................35
12.20   Plan Supplement .......................................................................................................35

Article XIII
## CONFIRMATION REQUEST

.................................................................................................................35

Petra Fund REIT Corp. and Petra Offshore Fund L.P., the above-captioned debtors and debtors-in-possession, propose this Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code. Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors (as hereinafter defined) expressly reserve the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

# ARTICLE I

# DEFINITIONS OF TERMS

## 1.1 Defined Terms

**"Administrative Claim"**  shall mean a Claim under sections 503(b) and 1114(e)(2) of the Bankruptcy Code that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the estates incurred after the Petition Date, including any and all fees and expenses of Professionals.

**"Allowed Claim or Allowed Interest"**  shall mean, with reference to any Claim against or Equity Interest in the Debtors, (a) any Claim against or Equity Interest in the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest to claim has been filed, (b) any Claim or Equity Interest allowed hereunder, (c) any Claim or Equity Interest which is not Disputed, (d) any Claim or Equity Interest that is compromised, settled or otherwise resolved pursuant to a Final Order of the Court or under the Plan, or (e) any Claim or Equity Interest which, if Disputed, has been Allowed by Final Order; provided, however, that Claims and Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" or "Allowed Equity Interests" hereunder. Unless otherwise specified herein or by order of the Court "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date.

**"Assets"**  shall mean the Cash, Settlement Payments, and any other

assets owned by the Debtors prior to the Effective Date.

**"Ballot"** shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims and Equity Interests in classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims (and Equity Interests, as applicable) may use to vote to accept or reject the Plan.

**"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§101 et seq., as now in effect or hereafter amended.

**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the United States District Court for the Southern District of New York and the United States Bankruptcy Court for the Southern District of New York, as now in effect or hereafter amended.

**"Business Day"** shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

**"Cash"** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

**"CDO Preferred Shares"** shall mean those certain preferred shares in the original notional amount of $130,000,000.00 issued in connection with the Petra CDO.

**"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases pending for the Debtors.

**"Claim"** shall mean a claim against either Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code, or any portion thereof.

**"Class"** shall mean a category of holders of Claims or Equity Interests, which are substantially similar in nature to each other, as classified pursuant to Article III of the Plan.

**"Class F Bonds"** shall mean those certain Class F Notes due 2047 in the original principal amount of $33,000,000.00, issued in connection with the Petra CDO.

**"Class G Bonds"** shall mean those certain Class G Notes due 2047 in the

DOCSNY-452461v2

original principal amount of $20,000,000.00, issued in connection with the Petra CDO.

**"Class J Bonds"**      shall mean those certain Class J Notes due 2047 in the original principal amount of $42,500,000.00, issued in connection with the Petra CDO.

**"Class K Bonds"**      shall mean those certain Class K Notes due 2047 in the original principal amount of $32,500,000.00, issued in connection with the Petra CDO.

**"Class P Preferred Stock"**      shall mean the preferred shares issued by New REIT.

**"Confirmation"**      shall mean the entry of the Confirmation Order on the docket of the Court.

**"Confirmation Date"**      shall mean the date of entry of an order of the Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**"Confirmation Hearing"**      shall mean the hearing to confirm the Plan.

**"Confirmation Order"**      shall mean the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Continuation Addendum"**      shall mean the addendum that may be added to the Notice of Effective Date, as described further in section 5.2(B) of the Plan.

**"Court"**      shall mean the United States Bankruptcy Court for the Southern District of New York or such other court as may hereafter be granted jurisdiction over the Chapter 11 Cases.

**"Creditor"**      shall mean any person or entity having a Claim against the Debtors, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**"Debtor-Released Parties"**      shall mean, collectively: (a) the Debtors' and their affiliates' current and former directors, officers, employees, agents, members, managers and management companies, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons as well as the directors, officers and employees of such persons), each solely in their capacity as such, and only if such Persons

3

occupied any such positions at any time on or after the Petition Date; (b) JPM and its current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in their capacity as such; and (c) RBS and each holder of a General Unsecured Claim and its current and former officers, partners, directors, employees, agents, members, shareholders, advisors, and professionals (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons), each solely in their capacity as such, but only if such Creditor is a Releasing Party.

**"Debtors"**      shall mean, individually or collectively (as applicable), REIT and Offshore.

**"Disclosure Statement"**      shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

**"Disputed"**      shall mean, with reference to any Claim against or Interest in the Debtors, a Claim or Interest, or any portion thereof, that is not an Allowed Claim or an Allowed Interest, including, but not limited to, Claims or Interests (1) as to which an objection has been interposed as of any deadline fixed by the Plan, as may be extended in accordance with the Plan, and (2) the allowance or disallowance of which is not yet the subject of a Final Order.

**"Distributable Assets"**      shall mean those Liquidation Trust Funds that are not being held as Liquidation Trust Reserves.

**"Effective Date"**      shall mean the date on which each of the conditions set forth in section 10.1 of the Plan have been satisfied or waived (if waivable).

**"Equity Interest or Interests"**      shall mean any share of common stock or other instrument evidencing ownership interest in the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

**"Escrow Agent"**      shall mean an escrow agent of national reputation that

shall hold the JPM Debt Collateral and the RBS Debt Collateral for so long as the JPM Debt and the RBS Debt, respectively, remain outstanding.

**"Exculpated Parties"**
shall mean collectively: (a) the Debtors and their current and former directors, officers, employees, agents, members, advisors, managers, management company and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons as well as the directors, officers, and employees of each), each solely in their capacity as such, and to the extent such Persons occupied any such positions at any time on or after the Petition Date; and (b) JPM and its current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in their capacity as such.

**"Fee Claim"**
shall mean a claim under sections 328, 330(a), 503 and/or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

**"File," "Filed," or "Filing"**
shall mean file, filed or filing with the United States Bankruptcy Court for the Southern District of New York.

**"Final Order"**
shall mean an order entered by the Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

**"General Unsecured Claim"**
shall mean any Claim against the Debtors, other than an Administrative Claim, Priority Tax Claim, or Secured Claim.

**"Highest Bidder"**
shall mean the Potential Bidder, if any, that submits the highest Qualified Bid.

**"Impaired"**
shall have the meaning set forth in section 1124 of the Bankruptcy Code.

**"Intercompany Claims"**
shall mean any and all pre- and post-petition Claims of a Debtor or against a Debtor by or against an affiliate of a

5

Debtor.

| | |
|---|---|
| **"JPM"** | shall mean Bear Stearns Funding, Inc., together with its affiliates, successors and assigns. |
| **"JPM Debt"** | shall mean that certain debt obligation to be issued by New REIT to JPM as described more fully in Article VII of the Plan. |
| **"JPM Debt Collateral"** | shall mean the shares of New REIT QRS 1, as pledged to secure the JPM Debt. |
| **"JPM REIT Collateral"** | shall mean the Class K Bonds and the CDO Preferred Shares. |
| **"JPM REIT Collateral Cash Flow"** | shall mean all cash (whether constituting interest proceeds, principal proceeds or any other proceeds) received by New REIT directly or indirectly in connection with a "Payment Date" under the Petra CDO indenture in respect of the JPM REIT Collateral, other than and subject to (i) any amounts applied to the payment of New REIT Management Fees and (ii) any amounts reserved or allocated for distribution to the holders of the Class P Preferred Stock to comply with the real estate investment trust rules under the federal tax code. |
| **"JPM Stipulated Claim Amount"** | shall mean $14,598,737.00. |
| **"Judgments"** | shall mean any unsatisfied judgments existing in favor of Debtors other than any constituting proceeds of or otherwise related to New REIT Assets. |
| **"Liens"** | shall mean, with respect to any asset or property (or the rents, revenues, income, profits, or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security device of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any asset or property is transferred, sequestered or otherwise identified for the |

6

purpose of subjecting or making available the same for the payment or other satisfaction of debt or performance of any other obligation in priority to the payment of general unsecured creditors.

**"Liquidation Trust"**  shall mean the trust to be created under the Liquidation Trust Agreement and pursuant to the Plan, to the extent the Settlement Payments have not been reduced to Cash prior to the Effective Date.

**"Liquidation Trust Agreement"**  shall mean the trust agreement to be entered into pursuant to Article VI of the Plan to the extent the Liquidation Trust is to be created, a form of which will be included in the Plan Supplement.

**"Liquidation Trust Counsel"**  shall mean Dickstein Shapiro LLP as general counsel to the Liquidation Trust, and any other attorney or law firm that succeeds Dickstein Shapiro in that capacity.

**"Liquidation Trust Expenses"**  shall mean all expenses incurred (i) by the Debtors in reasonable furtherance of the creation and implementation of the Liquidation Trust, and (ii) by the Liquidation Trust and/or Liquidation Trustee as part of the administration, operation and winding up of the Liquidation Trust, including, but not limited to, the fees and expenses of the Liquidation Trustee, Liquidation Trust Counsel and other Professionals, including but not limited to any expenses incurred in connection with collecting or enforcing the Settlement Payments.

**"Liquidation Trust Funds"**  shall mean (a) the Remaining REIT Assets and Offshore Assets transferred to the Liquidation Trust that constitute Cash, and (b) any proceeds recovered by the Liquidation Trust for the benefit of holders of Allowed Claims, including, but not limited to, the collection of Settlement Payments.

**"Liquidation Trust Reserves"**  shall mean those Liquidation Trust Funds being reserved by the Liquidation Trustee in accordance with the Plan and/or the Liquidation Trust Agreement, including relating to satisfaction of Administrative Claims, Disputed Claims, and Liquidation Trust Expenses.

**"Liquidation Trust Termination Date"**  shall mean the date on which the Liquidation Trust terminates pursuant to the terms of the Liquidation Trust Agreement.

**"Liquidation Trustee"**  shall mean the person, currently contemplated to be James

A. Goodman, employed pursuant to the Liquidation Trust Agreement and Liquidation Trustee Employment Agreement, and all successors to such person, to the extent the Liquidation Trust is created. Assuming the Liquidation Trust is formed, the Liquidation Trustee shall serve as the representative of the Debtors' estates for purposes of administering the Plan and oversee the winding up of the Debtors' affairs and the administration of the Post-Confirmation Debtors and the Liquidation Trust following the Effective Date, as set forth more fully in the Plan.

**"Liquidation Trustee Employment Agreement"**     shall mean the employment agreement between the Liquidation Trust and the Liquidation Trustee, which will be included in the Plan Supplement, and alternatively which may be incorporated into and constitute a portion of the Liquidation Trust Agreement.

**"New REIT"**     shall mean a company identified on the Term Sheet as "Newco 3" that is to be formed on or before the Effective Date that is to be qualified as a real estate investment trust, and which shall own one hundred percent (100%) of the equity interests in New REIT QRS 1 and New REIT QRS 2.

**"New REIT Assets"**     shall mean (i) REIT's equity interests in PS SPV and (ii) the RBS REIT Collateral.

**"New REIT Collateral Manager"**     shall mean an asset management company, anticipated to be Petra Capital Management LLC.

**"New REIT Companies"**     shall mean New REIT, New REIT QRS 1, and New REIT QRS 2, together with their affiliates, successors and/or assigns.

**"New REIT Management Agreement"**     shall mean that certain management agreement to be entered into between New REIT and New REIT Collateral Manager, a form of which will be included in the Plan Supplement.

**"New REIT Management Fees"**     shall mean those management fees to be paid to New REIT Collateral Manager under the New REIT Management Agreement.

**"New REIT QRS 1"**     shall mean that certain company identified on the Term Sheet as "Newco 1" that is to be formed on or before the Effective Date and shall be treated as a qualified real estate investment trust subsidiary, as that term is used in 26

U.S.C. § 856.

**"New REIT QRS 2"**          shall mean that certain company identified on the Term Sheet as "Newco 2" that is to be formed on or before the Effective Date and shall be treated as a qualified real estate investment trust subsidiary, as that term is used in 26 U.S.C. § 856.

**"Non-Debtor Released Party"**          shall mean any Released Party that is not a Debtor, or its director, director, officer, employee, agent, member, shareholder, manager, advisor or professional (including any attorneys, financial advisors, investment bankers, and other professionals retained by such person, as well as the officers, directors, and employees of same), each solely in its capacity as such.

**"Notice of Dissolution"**          shall mean the notice to be Filed subsequent to the Notice of Effective Date, to the extent the Notice of Effective Date contains a Continuation Addendum.

**"Notice of Effective Date"**          shall mean the Notice to be Filed pursuant to section 5.2(B) of the Plan.

**"Offshore"**          shall mean the debtor Petra Offshore Fund L.P.

**"Offshore Assets"**          shall mean the Property of Offshore.

**"Other Secured Claims"**          shall mean any Secured Claim not held by JPM or RBS.

**"Person"**          shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

**"Petition Date"**          shall mean October 20, 2010, the date upon which the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

**"Petra CDO"**          shall mean that certain Petra CRE CDO 2007-1.

**"Plan"**          shall mean the Debtors' Plan of Reorganization, and as applicable, all exhibits or supplements hereto (including the Plan Supplement) and any amendments or modifications hereto.

9

| | |
|---|---|
| **"Plan Supplement"** | shall mean the compilation of documents and form of documents specified in the Plan to be filed as set forth in section 12.20 of the Plan. |
| **"Post-Confirmation Debtors"** | shall mean the Debtors as they exist following the Confirmation Date. |
| **"Potential Bidder"** | shall mean any Person other than New REIT that participates in the auction procedures described in section 5.13 of the Plan. |
| **"Priority Tax Claim"** | shall mean any Claim for taxes against the Debtors, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code. |
| **"Procedures Order"** | shall mean the Order of the Court approving, among other things, voting and solicitation procedures, the form of voting ballots, the solicitation period and the voting tabulation procedures regarding the Plan. |
| **"Professionals"** | shall mean attorneys, accountants or other professional Persons (i) employed by the Debtors pursuant to an order of the Court in accordance with sections 327 and 1103 of the Bankruptcy Code; and/or, as applicable after the Effective Date, or (ii) employed by the Liquidation Trust or the Post-Confirmation Debtors pursuant to Article V of the Plan. |
| **"Property"** | shall mean all property of the Debtors' estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' estates, as defined in section 541 of the Bankruptcy Code. |
| **"Pro Rata"** | shall mean, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class. |
| **"PS SPV"** | shall mean Petra PS SPV Corp., that wholly-owned special-purpose subsidiary of REIT whose only assets of other than nominal value are the JPM REIT Collateral. |
| **"Qualified Bid"** | shall mean a bid by a Potential Bidder that meets the requirements of the Plan. |

DOCSNY-452461v2

| | |
|---|---|
| **"RBS Claim Amount"** | shall mean the current total value of the RBS Claim, secured and unsecured (if any), as set forth in the Plan Supplement. |
| **"RBS Debt"** | shall mean that certain debt obligation to be issued by New REIT to RBS as described more fully in Article VII of the Plan. |
| **"RBS Debt Collateral"** | shall mean the RBS REIT Collateral, as pledged to secure the RBS Debt. |
| **"RBS REIT Collateral"** | shall mean the Class F Bonds; the Class G Bonds; and the Class J Bonds. |
| **"RBS REIT Collateral Cash Flow"** | shall mean all cash (whether constituting interest proceeds, principal proceeds or any other proceeds) received by New REIT either directly or indirectly in connection with a "Payment Date" under the Petra CDO indenture in respect of the RBS REIT Collateral. |
| **"REIT"** | shall mean the debtor Petra Fund REIT Corp. |
| **"REIT Opinion"** | shall mean that legal opinion to be issued that is described more fully in the Term Sheet and Article VII of the Plan. |
| **"Released Parties"** | shall mean, collectively, (a) the Debtors, and their current and former directors, officers, employees, agents, members, shareholders, managers, management company, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons as well as the directors, officers, and employees of such persons), each solely in its capacity as such, and to the extent such Persons occupied such positions at any time on or after the Petition Date;  (b) JPM and its current and former officers, partners, director, employees, agents members, shareholders, advisors and professionals (including any attorneys, financial advisors and other professionals retained by such persons) each solely in its capacity as such; and (c) RBS and each holder of a General Unsecured Claim and its current and former officers, partners, directors, employees, agents, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons), each solely in its capacity as such, but only if such Creditor is a Releasing Party. |

DOCSNY-452461v2

| | |
|---|---|
| **"Releasing Party"** | shall mean each of, and solely in its capacity as such, (a) JPM, on behalf of itself, and its successors, assigns and affiliates, (b) RBS, if (i) it has not voted to reject the Plan, or (ii) if voting to reject the Plan, did not check the box on the applicable Ballot indicating that it opts not to grant the releases provided in the Plan (and correspondingly not benefit from the releases otherwise to be issued in its favor), and (c) any holder of a General Unsecured Claim that (i) has not voted to reject the Plan, or (ii) if voting to reject the Plan, who has not checked the box on the applicable Ballot indicating that it opts not to grant the releases provided in the Plan (and correspondingly not benefit from the releases otherwise to be issued in its favor) . |
| **"Remaining REIT Assets"** | shall mean all REIT Property that does not constitute New REIT Assets or rents, revenues, income, profits, or proceeds of, or otherwise related to, New REIT Assets. |
| **"Sale Assets"** | shall mean those Assets to be sold pursuant to the sale and/or auction procedures described in Article V of the Plan. |
| **"Sale Price"** | shall mean the amount of one hundred thousand dollars ($100,000.00), which is the price to be paid to purchase all of the Sale Assets pursuant to section 5.12 of the Plan, which price shall constitute the opening bid for the Sale Assets if they are to be sold at auction pursuant to section 5.13 of the Plan. |
| **"Secured Claim"** | shall mean any Claim that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which a Debtor directly or indirectly has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by a Debtor and the holder of such Claim. Except as otherwise provided in the Plan, the amount of any such Claim that exceeds the value of the holder's interest in the Debtor's interest in such property or the amount subject to setoff shall be treated as a General Unsecured Claim. |

DOCSNY-452461v2

| | |
|---|---|
| **"Settlement Payments"** | shall mean the then remaining settlement payments at the time of Confirmation under that certain settlement agreement, whose ten (10) payments aggregate $3,750,000 and at the time of the filing of the Plan, the first payment had already been paid, in the amount of $750,000.00, leaving $3,000,000.00 outstanding. |
| **"Substitute Winning Bidder"** | shall mean the Potential Bidder, if any, that submits the second-highest Qualified Bid, to the extent the original Winning Bidder does not submit timely payment for its bid. |
| **"Term Sheet"** | shall mean that certain Summary of Principal Terms of Proposed Restructuring Agreement dated July 30, 2009, as incorporated into that certain Plan Support Agreement of even date, each of which was previously filed by the Debtors in the Chapter 11 Cases. |
| **"Unimpaired"** | shall mean any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code. |
| **"Voting Deadline"** | shall mean the deadline established by Order of the Court for receipt of Ballots voting to accept or reject the Plan. |
| **"Winning Bidder"** | shall mean the winner of any auction conducted pursuant to section 5.13 of the Plan. |

**1.2** **Interpretation, Application of Definitions and Rules of Construction.** All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.3** **Consistency with Term Sheet.** The Plan and the Disclosure Statement shall be interpreted to the extent possible to be materially consistent with the Term Sheet, _provided, however,_ that in the event of any inconsistency between the Term Sheet and the Plan, the Plan shall govern.

# ARTICLE II

## TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

**2.1** **Classification of Administrative and Priority Tax Claims.** Administrative Claims and Priority Tax Claims are not classified in this Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims as well as any and all Claims arising from Allowed Priority Tax Claims pursuant to this Article II of the Plan, shall be in

DOCSNY-452461v2

full and complete satisfaction, settlement, release and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

**2.2** **Treatment of Allowed Administrative Claims.** Except to the extent that an Allowed Administrative Claim has been paid prior to the Effective Date or a holder thereof agrees otherwise, each holder of an Allowed Administrative Claim shall be entitled to receive in full and complete settlement, release and discharge of such Claim payment in full in Cash of the unpaid portion of an Allowed Administrative Claim on the Effective Date. Such Claims are not Impaired and thus the holders of such Claims are presumed to accept the Plan and are not entitled to vote on the Plan.

**2.3** **Payment of U.S. Trustee Fees.** Except to the extent that the Office of the U.S. Trustee agrees otherwise, any outstanding quarterly or other fees owed to the Office of the U.S. Trustee as of the Effective Date shall be paid on or prior to the Effective Date.

**2.4** **Bar Date for Administrative Claims.** Requests for payment of Administrative Claims that are to be sought through the Court, including, but not limited to, Fee Claims, must be Filed and served on the Debtors' counsel, the Liquidation Trust (to the extent it has come into existence) and the office of the United States Trustee, no later than thirty days after the Effective Date unless otherwise ordered by the Court (the "Administrative Claim Bar Date"). Any Person that is required to serve a request for payment of an Administrative Claim and fails to timely serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Liquidation Trust or the Debtors may object to requests for payment of Administrative Claims, other than Fee Claims, by Filing and serving such objection on the requesting party at any time. Any objection to Fee Claims must be Filed and served on Debtors' counsel and the office of the U.S. Trustee, as well as the Professional or other Person requesting allowance of such Claims, on or before the date that is fifteen (15) days (or such longer period as may be allowed by agreement of the Debtors or the Liquidation Trust or by order of the Bankruptcy Court) after the date on which the applicable application was served.

**2.5** **Treatment of Allowed Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, or (b) such lesser amount as the holder of an Allowed Priority Tax Claim, on the one hand, and the Debtors or the Liquidation Trust, on the other hand, might otherwise agree. Payment to the holders of an Allowed Priority Tax Claim will be made as soon as practicable after the later of (i) the Effective Date; (ii) the date on which such Claim becomes an Allowed Claim; or (iii) upon other agreed terms. Such Claims are not Impaired and thus the holders of such Claims are presumed to accept the Plan and are not entitled to vote on the Plan.

DOCSNY-452461v2

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1** Administrative Claims and Priority Tax Claims are unclassified. For purposes of this Plan, all other Claims and Interests are classified as follows:

**3.2** Class 1 Claims shall consist of the Secured Claims of JPM.

**3.3** Class 1A Claims shall consist of the Secured Claims of RBS.

**3.4** Class 2 Claims shall consist of all Other Secured Claims.

**3.5** Class 3 Claims shall consist of all General Unsecured Claims of Debtors.

**3.6** Class 4 Claims shall consist of all Interests in REIT.

**3.7** Class 5 Claims shall consist of all Interests in Offshore.

# ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

**4.1** **Discharge of Claims and Interests.** The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to this Article IV of the Plan shall be in full and complete satisfaction, settlement, release, discharge of and in exchange for such Claims and Interests. The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

**4.2** **Treatment of Class 1 Claims - Secured Claims of JPM.** Class 1 shall consist of the Secured Claims of JPM. Class 1 Claims are Impaired. Based upon negotiations between the Debtors and JPM, JPM shall receive the following treatment: (a) JPM's Secured Claims shall be exchanged for the JPM Debt, which shall be secured by a first-priority Lien on New REIT's shares of New REIT QRS 1 as set forth more fully in Article VII of this Plan and its Liens on the JPM REIT Collateral will be extinguished, but (b) JPM shall not receive any additional distribution as a holder of a General Unsecured Claim with respect to any deficiency amount represented by the difference between the amount of JPM's Secured Claims and the JPM Stipulated Claim Amount. The holders of Claims in this Class are entitled to vote.

**4.3** **Treatment of Class 1A Claims - Secured Claims of RBS.** Class 1A Claims are Impaired. RBS shall receive the following treatment: (a) RBS's Secured Claims shall be exchanged for the RBS Debt and RBS shall retain its lien on the RBS REIT Collateral being transferred to New REIT QRS 2 as set forth more fully in Article VII of this Plan, and (b) RBS shall hold a Class 3 General Unsecured Claim (and receive corresponding distribution as a holder of a General Unsecured Claim) to the extent there is any deficiency amount represented by the difference between the value of the Liens securing RBS's Secured Claims and the RBS Claim Amount. In the Debtors' assessment, the RBS REIT Collateral is currently worth approximately

15

one hundred fifty thousand dollars ($150,000 USD). As described more fully in section 12.10 of the Plan, in the event RBS does not vote to reject the Plan, RBS and its affiliates, officers, directors, employees and agents shall also be included within the list of parties released under section 12.10(a) and 12.10(b) of the Plan. The holders of Claims in this Class are entitled to vote.

4.4     **Treatment of Class 2 Claims – Other Secured Claims.** Class 2 Other Secured Claims are Impaired. To the extent there are any Claims in this Class, each such Claim shall be deemed to be a separate subclass. Each holder of an Allowed Class 2 Claim shall be paid from the balance of Liquidation Trust Funds, if any, or Debtors' Assets, as applicable, that are available only after payment of Administrative Claims, Priority Tax Claims and Liquidation Trust Expenses under the Liquidation Trust Agreement, as applicable, are paid in full. The holders of Claims in this Class are entitled to vote.

4.5     **Treatment of Class 3 General Unsecured Claims of Debtors.** Class 3 Claims are Impaired. Each holder of an Allowed Class 3 General Unsecured Claim shall receive from the Liquidation Trust, as soon as is reasonably practicable after the Effective Date, which is presumed to be not later than one hundred twenty (120) days after the Effective Date and then annually thereafter (assuming Distributable Assets exist at each such time), a pro rata share of the then Distributable Assets in a pro rata amount equal to 100% of such holders' Allowed Class 3 General Unsecured Claim. To the extent there is not a Liquidation Trust, each holder of an Allowed Class 3 Claim shall receive from the Debtors, as soon as is reasonably practicable, which is presumed not to be later than one hundred twenty (120) days after the Effective Date, a pro rata share of remaining Debtors' Assets after payment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Secured Claims. The holders of Claims in this Class are entitled to vote.

At this time, all Offshore Assets and many of the Remaining REIT Assets other than the Settlement Payments have either a zero or net negative value, while others have values that are at best uncertain, and are nonetheless difficult and cumbersome to manage. Thus, Debtors will dispose of all identified Remaining REIT Assets (other than the Settlement Payments) and all Offshore Assets pursuant to the sale and auction procedures described in Article V of the Plan to reduce the administrative burden and expenses associated with owning such assets. To the extent any Cash value is realized from such sales, and to the extent the Liquidation Trust is created, such cash will be transferred to the Liquidation Trust in accordance with the Plan, and each holder of an Allowed General Unsecured Claim shall receive from the Liquidation Trust a pro rata share of the then resulting Distributable Assets in a pro rata amount equal to 100% of such holders' Allowed Class 3 General Unsecured Claim, to be paid under the same "as soon as is reasonably practicable" timeline described immediately above. Notwithstanding the foregoing, to the extent the Liquidation Trust is not created, then any such proceeds shall be distributed with the other Debtors' Assets being distributed, if any, to the holders of Allowed Class 3 Claims.

4.6     **Treatment of Class 4 Interests in REIT.** Class 4 Interests are Impaired. The holders of Class 4 Interests shall receive no distributions whatsoever on account of such Class 4 Interests. All Class 4 Interests shall be cancelled on the Effective Date. As the holders of Class 4 Interests are receiving no distributions, they are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

DOCSNY-452461v2

**4.7     Treatment of Class 5 – Interests in Offshore.**  Class 5 Interests are Impaired.  The holders of Class 5 Interests shall receive no distributions whatsoever on account of such Class 5 Interests.  All Class 5 Interests shall be cancelled on the Effective Date.  As the holders of Class 5 Interests are receiving no distributions, they are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1     Substantive Consolidation.**  The day after the Effective Date, the estates of each of the Debtors will be substantively consolidated into a single estate for purposes of this Plan and the distributions hereunder.  In accordance with the substantive consolidation of the Debtors' estates, (i) all assets and liabilities of the Debtors will be merged; (ii) any obligations of any Debtor will be deemed to be one obligation of the Debtors; (iii) any claims Filed or to be Filed in connection with any such obligations will be deemed one claim against the Debtors; (iv) each Claim Filed in the Chapter 11 Case of any Debtor will be deemed Filed against the Debtors' consolidated estate; (v) all transfers, disbursements and distributions made by any Debtor will be deemed to be made by all of the Debtors; and (vi) no amount will be paid on account of Intercompany Claims.  Holders of Allowed Claims in each Class shall be entitled to their Pro Rata share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim.

**5.2     Corporate Action.**

(A)     Subject to sub-section 5.2(B) and section 5.14 of the Plan, the day after the Effective Date and automatically and without further action, (i) each existing executive, officer, director and employee of each Debtor will be deemed terminated by the Liquidation Trust; (ii) each Debtor shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of each Debtor; (iii) the Debtors' Equity Interests shall be cancelled; and (iv) the Remaining REIT Assets and the Offshore Assets will be transferred to the Liquidation Trust.  Notwithstanding the foregoing, the Liquidation Trust and/or the Liquidation Trustee may take such additional actions deemed necessary in its or his discretion, including based on consultation with Liquidation Trust Counsel or other Professionals, to implement the foregoing corporate actions. The Liquidation Trust will administer the Plan and all actions taken under the Plan in the name of the Post-Confirmation Debtors shall be taken through the Liquidation Trust.

(B)     Notwithstanding anything to the contrary in the Plan, on or the day after the Effective Date, the Debtors or the Liquidation Trust shall File a Notice of Effective Date indicating when the Effective Date has occurred; provided, however, that such notice may include a Continuation Addendum providing that the Debtors wish to remain in existence for the limited purposes of assisting with the winding down of their affairs and finalizing the administration of the Chapter 11 Cases (including objecting to Claims), in which case the actions described in sub-sections 5.2(A)(i) and (ii) of the Plan will not occur on the day after the Effective Date; provided, further, that if the Notice of Effective Date contains a Continuation Addendum, the Debtors or the Liquidation Trust shall subsequently File a

17

Notice of Dissolution, at which time the actions described in sub-sections 5.2(A)(i) and (ii) of the Plan will occur automatically and without further action.

**5.3** **Liquidation Trustee**. Subject to section 5.14 hereof, on the Effective Date, the Liquidation Trust shall begin acting for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Liquidation Trust shall act through the Liquidation Trustee and all actions referenced herein for which the Liquidation Trust is authorized to perform, the Liquidation Trustee shall be so authorized to perform. The Liquidation Trustee and Liquidation Trust Counsel shall not be liable for any action taken or omitted believed in good faith to be authorized or within their rights or powers unless it is ultimately and finally determined by a court of final jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

**5.4** **Powers and Duties of the Liquidation Trustee.** Subject to section 5.14 of the Plan, all distributions to be made to holders of Allowed Claims and Allowed Interests under the Plan shall be made by the Liquidation Trustee, who shall deposit and hold all Cash and other Property in trust for the benefit of holders of such Allowed Claims (including Professionals). Subject to the foregoing, the duties and powers of the Liquidation Trust (if it comes into existence) shall include the following:

a) To exercise all power and authority that may be exercised, commence all proceedings that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Post-Confirmation Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan and all transfers thereunder on behalf of the Post-Confirmation Debtors;

b) To maintain all accounts, invest cash of the Post-Confirmation Debtors and/or the Liquidation Trust, make interim and final distributions and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtors, Post-Confirmation Debtors or Liquidation Trust;

c) To take all steps necessary to wind up the affairs of the Debtors, Post-Confirmation Debtors and Liquidation Trust;

d) To prosecute, cease to prosecute, compromise or settle (i) the Settlement Payments and (ii) objections to Claims and Interests, including Administrative Claims, Priority Tax Claims, Secured Claims, and General Unsecured Claims (disputed or otherwise);

e) To make decisions regarding the retention or engagement of Professionals or other Persons by the Liquidation Trust;

f) To pay, without court order, all reasonable fees and expenses of the Liquidation Trust's' Professionals incurred and unpaid after the Effective Date;

18

g)      To pay, without court order, (i) all Allowed and unpaid fees and expenses of the Debtors' Professionals incurred and unpaid after the Petition Date and (ii) all reasonable fees and expenses of the Debtors' Professionals incurred after the Effective Date;

h)      To file with the Court the reports and other documents required by the Plan or otherwise required to close the Chapter 11 Cases;

i)      To prepare and file tax and other informational returns for the Debtors, Post-Confirmation Debtors and/or Liquidation Trust;

j)      To set off amounts owed to the Debtors or Post-Confirmation Debtors against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim under the Plan;

k)      To abandon any Remaining REIT Assets, Offshore Assets, or any other assets of the Debtors, Post-Confirmation Debtors or Liquidation Trust within its control, which cannot be sold or otherwise disposed of for value and whose distribution to holders of Allowed Claims and Interests would not be feasible or cost-effective in the reasonable judgment of the Liquidation Trustee;

l)      To provide for storage and destruction of records, as deemed appropriate by the Liquidation Trustee and without Court approval; and

m)      To take all other actions not inconsistent with the provisions of the Plan which the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration of the Plan.

**5.5      Investments.** All Cash and Liquidation Trust Funds held by the Liquidation Trust in any accounts or otherwise may be invested in any investment the Liquidation Trustee deems appropriate.

**5.6      Resignation, Death or Removal.** Upon application and for good cause shown and upon prior notice to the Liquidation Trust Counsel, the Court may remove the Liquidation Trustee from his role as Liquidation Trustee. Except as otherwise provided herein, in the event of the resignation or removal, death or incapacity of the Liquidation Trustee, the Liquidation Trust Counsel shall designate another Person to become Liquidation Trustee. Any successor to the Liquidation Trustee shall be bound by the provisions of the Plan, the Liquidation Trust Agreement and the order appointing the Liquidation Trustee. Thereupon the successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor under terms to be agreed by the Liquidation Trust Counsel. In the event of the resignation of the Liquidation Trustee, the Liquidation Trustee shall remain as the Liquidation Trustee until such time as the Liquidation Trust Counsel designates a successor. Notwithstanding anything to the contrary in the Plan, a Person or Persons representing greater than sixty percent (60%) of the beneficial interests in the Liquidation Trust may seek removal of the Liquidation Trustee without cause, provided that such Person or Persons designates a successor Liquidation Trustee who is willing to serve pursuant to terms agreeable to the Person or Persons seeking removal of the current Liquidation Trustee.

19

**5.7** **Winding Up Affairs**. Following the Confirmation Date, the Post-Confirmation Debtors shall take any actions reasonably necessary to effectuate the Plan, including, but not limited to, transferring the Remaining REIT Assets and the Offshore Assets to the Liquidation Trust for the benefit of holders of Allowed Claims. Subject to section 5.14 hereof, on and after the Effective Date, the Liquidation Trustee may, in the name of the Debtors or Post-Confirmation Debtors or the Liquidation Trust, take such actions without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, assuming there is a Liquidation Trust, the Liquidation Trustee may, without application to or approval of the Court, (i) pay charges for Professional fees and expenses that constitute Allowed Administrative Claims that were incurred by the Debtors after the Petition Date and (ii) pay charges for Professional fees and expenses that were incurred by the Post-Confirmation Debtors or Liquidation Trust after the Effective Date. If there is not a Liquidation Trust, the Post-Confirmation Debtors may, without application to or approval of the Court, pay the same fees and expenses, to the extent they relate to the Debtors or Post-Confirmation Debtors.

**5.8** **Release of Liens**. Except as otherwise provided in the Plan (including Article VII) or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the property of the Debtors' estates shall be released.

**5.9** **Preservation of Causes of Action.** Any pending litigation claims in favor of the Debtors are preserved under the Plan, as well as the rights to enforce the Settlement Payments and related claims.

**5.10** **Assignment of Causes of Action.** On the day after the Effective Date or as otherwise provided in the Plan and without further order of the Court, the causes of action described above in section 5.9 of the Plan shall be transferred to the Liquidation Trust (if it exists) for the purpose of enforcing, settling, litigating, liquidating or releasing, as appropriate, such causes of action for the benefit of the holders of Allowed Claims. The Liquidation Trustee may pursue, settle or release all retained rights of action, as appropriate, in accordance with the best interest of and for the benefit of the holders of Allowed Claims.

**5.11** **Injunction. All Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from directly or indirectly: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Liquidation Trust or the New REIT Companies or their assets or properties with respect to any such Claim or Equity Interest; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Liquidation Trust or the New REIT Companies on account of any such Claim or Equity Interest; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Liquidation Trust or the New REIT Companies or their assets or properties on account of any such Claim or Equity Interest; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors against the property or interests in property of the Liquidation Trust or the New REIT Companies on account of any such Claim or Equity Interest; and (v) commencing or**

**continuing in any manner any action or other proceeding of any kind against the Liquidation Trust or the New REIT Companies or their assets or properties. Nothing in the foregoing paragraph, however, shall interfere with any remedy available to JPM or RBS under the new debt instruments to be issued under Article VII of the Plan.**

      5.12    <u>Post-Confirmation Sale of Assets</u>. Unless an auction is to occur pursuant to section 5.13 of the Plan, on or before the Effective Date, New REIT shall buy the following Sale Assets in cash, free and clear of any liens and claims, for the collective Sale Price of one hundred thousand dollars ($100,000 USD).

| Applicable Debtor | Asset |
|---|---|
| **Offshore** | |
| | Equity Interests in Petra Fund Master REIT Corp. |
| | Equity Interests in Petra Fund Holdings LLC |
| **REIT** | |
| | Detwiler Loan Participation |
| | Fort Tryon Loan Participation |
| | Equity Interests in PFRC Sub, LLC |
| | Equity Interests in Petra Offshore TRS L.P. |
| | |

      The Sale Assets referenced above are listed on the Debtors' publicly filed schedules. Further descriptions of the Sale Assets are being included as part of the Plan Supplement and further additional details and descriptions may be obtained upon request made to Debtors' counsel.

      5.13    <u>Auction Procedure.</u>

      (A)    If any person other than New REIT is interested in purchasing the Sale Assets, then by the deadlines set forth below, such Potential Bidder must submit to Debtors' counsel, in writing, the following documents:

(i)     on or before ten days after the Confirmation Date, its bid for the Sale Assets, which bid must meet the following criteria to be considered a Qualified Bid: (a) must be an all cash offer; (b) must be a minimum of ten thousand dollars ($10,000.00) greater than the Sale Price; and (c) must be for all of the Sale Assets;

(ii)    subject to sub-section (iii) below, whichever Potential Bidder, if any, that submits the highest and best Qualified Bid shall be declared the Highest Bidder and such Highest Bidder shall be declared the Winning Bidder of the auction; provided, however, that in lieu of any other "stalking horse" protections, New REIT shall have the right to match the Qualified Bid of the Highest Bidder and, if it elects to submit such a matching bid, shall be deemed to be the Winning Bidder; and

(iii)   subject to sub-section (iv) below, if the Winning Bidder is the Highest Bidder, payment in full for such bid must be made not later than three days after being declared by Debtors that it was the Winning Bidder. If such payment is not made, the Potential Bidder (if any) with the next highest Qualified Bid shall be declared the Winning Bidder (the "Substitute Winning Bidder"); provided, however, that the Substitute Winning Bidder shall also be required to submit payment for its bid not later than three days after being declared by Debtors as the new Winning Bidder; and

(iv)    Notwithstanding anything to the contrary, New REIT shall be deemed the Winning Bidder if any of the following occur: (a) there are no Qualified Bids; (b) New REIT submits a matching bid pursuant to sub-section (ii) above, (c) the Highest Bidder fails to make timely payment in full for its bid and there is no other Potential Bidder with a Qualified Bid who can become the Substitute Winning Bidder; or (d) the Substitute Winning Bidder fails to make timely payment in full for its bid. If New REIT is the Winning Bidder, payment in full shall be made on or before the Effective Date.

**5.14    Monetization of Settlement Payments.** Notwithstanding anything to the contrary in the Plan, Debtors are attempting to convert the Settlement Payments into Cash prior to the Effective Date, either via (1) a discounted pre-payment by the payors of the Settlement Payments or (2) selling or assigning the right to collect the Settlement Payments to a third party, which may occur by a sale or assignment using the procedures similar to those described in Sections 5.12 and 5.13 of the Plan for the Sale Assets. To the extent the terms of any such transaction are finalized prior to the Confirmation Hearing, the material terms will be included in the Plan Supplement and approved in connection with Confirmation of the Plan. To the extent the terms are not finalized until after the Confirmation Hearing, Debtors shall move this Court for such approval,

as appropriate, on an expedited basis (not less than two business days' notice). To the extent either of such transactions is consummated prior to the Effective Date, any such settlement or sale would remove the need for the Liquidation Trust and Liquidation Trustee because there would be no further Assets of Debtors to be liquidated.

## ARTICLE VI

## LIQUIDATION TRUST

**6.1** **Transfer by Debtors to Liquidation Trust.** On or the day after the Effective Date, but in no event prior to all transfers of New REIT Assets described herein, subject to section 5.14 hereof, the Debtors shall transfer to the Liquidation Trust for the benefit of all Allowed Claims free of all liens, claims and encumbrances (i) all rights, title and interest in the causes of action described in section 5.9 of the Plan (ii) the Remaining REIT Assets and (iii) the Offshore Assets.

**6.2** **Ratification.** On the Effective Date, each holder of Claims or Interests in Classes 1, 1A, 2, 3, 4 and 5 will be deemed to have ratified and become bound by the terms of the Liquidation Trust Agreement, to the extent that the Liquidation Trust is created.

**6.3** **Liquidation of Liquidation Trust Assets**. Subject to section 5.14 hereof, the Liquidation Trust shall be authorized to pursue, litigate or settle the causes of action, if any, transferred to it, in accordance with the Plan and the Liquidation Trust Agreement and pay all associated costs.

**6.4** **Powers.** The rights, powers and duties of the Liquidation Trust are set forth in the Liquidation Trust Agreement, which is incorporated herein by reference. Such rights, powers and duties are to be carried out by the Liquidation Trustee as set forth in the Liquidation Trust Agreement and shall vest without the need to obtain further Court approval.

**6.5** **Compensation.** Subject to section 5.14 of the Plan, the Liquidation Trustee and his retained professionals shall be compensated out of the Liquidation Trust Funds pursuant to the Liquidation Trustee Employment Agreement.

**6.6** **Appointment of Successor Liquidation Trustee.** In the event of the resignation or removal, death or incapacity of the Liquidation Trustee, the Liquidation Trust Counsel shall designate another Person to become Liquidation Trustee. Any such successor to the Liquidation Trustee shall be bound by the provisions of the Plan, the Liquidation Trust Agreement and the order appointing the Liquidation Trustee.

**6.7** **Termination of Liquidation Trustee.** After the Effective Date, and upon final resolution and collection of any funds obtained from any of the Assets transferred to the Liquidation Trust or the proceeds thereof, reconciliation of all Claims, distribution of all Liquidation Trust Funds, and any other action necessary under this Plan to wind down or dissolve the Liquidation Trust, the Liquidation Trust shall be dissolved and the Liquidation Trustee and the

Liquidation Trust Counsel (along with any other Professionals employed by the Liquidation Trust or the Liquidation Trustee) shall be relieved of further responsibility. Notwithstanding the foregoing, the Liquidation Trustee, in its absolute discretion, may dissolve the Liquidation Trust and distribute any remaining Liquidation Trust Funds pursuant to the terms of the Liquidation Trust Agreement at any time the Liquidation Trustee determines such dissolution would be in the best interest of the beneficiaries of the Liquidation Trust.

**6.8** **Applicability of Securities Law; Restrictions on Transfer**. The issuance of the noncertificated, beneficial interests in the Liquidation Trust shall, including pursuant to section 1145 of the Bankruptcy Code, be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities. Such interests in the Liquidation Trust will not be listed on any securities exchange or any quotation system, will not be represented by certificates, and will not be transferable except pursuant to the laws of descent and distribution or otherwise by operation of law.

**6.9** **Indemnification of Liquidation Trustee.** New REIT shall indemnify, hold harmless and reimburse the Liquidation Trustee against and from any and all loss, liability or expense which he may sustain or incur in the exercise and performance of any of his powers and duties under the Liquidation Trust Agreement, or for any act or omission in connection with or arising out of the administration of the Plan or the property to be distributed under the Liquidation Trust; provided, however, there shall be no such indemnification for the Liquidation Trustee's fraud, gross negligence, or willful misconduct; provided, further, that such indemnification shall be personal to the person initially serving as Liquidation Trustee, if any, and shall not extend to any successor Liquidation Trustee, unless (1) agreed to in writing by New REIT and (2) to the extent the JPM Debt remains outstanding, agreed to in writing by JPM. To the extent the Liquidation Trustee or the Court determines this indemnification to be insufficient, any Liquidation Trustee is authorized to obtain an insurance policy to provide similar protections.

## ARTICLE VII

## PROVISIONS REGARDING THE NEW REIT

**7.1** **Formation of New REIT Companies and Organization.** On or before the Effective Date, the Debtors and/or New REIT Collateral Manager shall cause the formation of New REIT, New REIT QRS 1, and New REIT QRS 2, and each of the New REIT Companies shall have an appropriate number of shareholders in order to qualify as a real estate investment trust or subsidiary thereof as that term is used in 26 U.S.C. § 856, including as set forth in section 7.2 of the Plan. New REIT shall be a new real estate investment trust, and shall own 100% of the equity interests of both New REIT QRS 1 and New REIT QRS 2, each of which shall be treated as a qualified real estate investment trust subsidiary, as that term is used in 26 U.S.C. § 856. Subsequent to transactions described in section 7.3 of Plan, New REIT QRS 1 shall own 100% of the equity interests of PS SPV which shall continue to own the JPM REIT Collateral.

**7.2** **Equity Structure of New REIT.** The organizational documents of New REIT shall provide for the issuance of one class of common stock, the holders of which shall be

DOCSNY-452461v2

identified in the Plan Supplement. In addition, the New REIT shall issue Class P Preferred Stock to at least ninety-nine additional stockholders (identified in the Plan Supplement.)

      **7.3    Transfers to New REIT.** On the Effective Date, REIT shall (i) transfer, subsequent to the release of the existing Liens held by JPM pursuant to section 4.2 of the Plan, (a) the JPM REIT Collateral and (b) all of REIT's shares of PS SPV, to New REIT QRS 1, and the shares of New REIT QRS 1 shall be subject to a valid, first-priority Lien in favor of JPM as set forth in section 7. 5 of the Plan as part of the exchange of JPM's Claims and related Liens under the Plan; and (ii) transfer the RBS REIT Collateral to New REIT QRS 2, subject to RBS retaining a Lien on the RBS REIT Collateral, as set forth in section 7.6 of the Plan, in an amount equal to the current value of the RBS REIT Collateral.

      **7.4    REIT Opinion.** Transfers in section 7.3 of the Plan are conditioned on delivery of an opinion addressed to JPM and RBS, substantially in the form attached in the Plan Supplement, which shall be substantially in the same form as the opinion attached to the Term Sheet, that the New REIT will qualify as a real estate investment trust, and that during and following the transfers contemplated under section 7.3 of the Plan, the issuer under the Petra CDO will continue to be treated as a qualified real estate investment trust subsidiary.

      **7.5    JPM Debt.** On or before the Effective Date, New REIT shall issue a debt instrument to JPM in the original principal amount of the JPM Stipulated Claim Amount. The JPM Debt will be non-recourse debt secured only by a perfected first-priority Lien on, and payable solely from proceeds of, New REIT's shares of New REIT QRS 1, which shall consist of 100% of the shares of New REIT QRS 1. The shares of New REIT QRS 1 shall be delivered to the Escrow Agent pursuant to the related escrow agreement (the "Escrow Agreement"). The Escrow Agreement shall provide that so long as any JPM Debt remains outstanding, the Escrow Agent shall receive and distribute the JPM REIT Collateral Cash Flow to JPM to apply towards the repayment of the principal of the JPM Debt and any interest accrued thereon. Upon the repayment of the JPM Debt in full in cash, the Escrow Agent shall be instructed to release the shares of New REIT QRS 1 to New REIT, and all liens in favor of JPM relating thereto shall be released.

      Until the JPM Debt is repaid in full, promptly following each "Payment Date" under the Petra CDO indenture, New REIT shall distribute the JPM REIT Collateral Cash Flow to the holders of the JPM Debt (which may include payment through the Escrow Agent). The JPM REIT Collateral Cash Flow shall be distributed to the holders of the JPM Debt on a monthly basis.

      **7.6    RBS Debt.** On or before the Effective Date, New REIT shall issue a debt instrument for the repayment of Debtor's reduced indebtedness to RBS in the outstanding principal amount of the then current value of the RBS REIT Collateral at the time of confirmation of the Plan, which amount shall be indicated in the Plan Supplement (or at the Confirmation Hearing, as applicable). Notwithstanding the foregoing, in the event RBS makes an election under section 1111(b) of the Bankruptcy Code (provided such election is timely in accordance with applicable law, including Bankruptcy Rule 3014) to have its claims and the RBS REIT Collateral treated in accordance therewith (the "1111(b) Election"), (i) the RBS Debt shall be in the face amount of the RBS Claim Amount, regardless of the current value of the RBS REIT Collateral, but (ii) the debt instrument governing the payment of such RBS Debt (the "1111(b) Note") shall be calculated and

structured such that the annual payments to RBS shall be limited to an amount such that the net present value of the total aggregate payments under the entirety of the 1111(b) Note are no greater than the current value of the RBS REIT Collateral at the time of confirmation of the Plan. The RBS Debt will be non-recourse debt secured only by, and payable solely from proceeds of, the continuing lien of RBS on the RBS Debt Collateral, which is the RBS REIT Collateral. The RBS REIT Collateral shall be delivered to the Escrow Agent pursuant to the Escrow Agreement. The Escrow Agreement shall provide that so long as any RBS Debt remains outstanding, the Escrow Agent shall receive and distribute RBS's allocation of the RBS REIT Collateral Cash Flow to RBS in reduction of the RBS Debt. Upon the repayment of the RBS Debt in full, the Escrow Agent shall be instructed to release the RBS REIT Collateral to New REIT QRS 2, and all liens in favor of RBS relating thereto shall be released.

Until the RBS Debt is repaid in full, promptly following each "Payment Date" under the Petra CDO indenture, New REIT shall distribute the RBS REIT Collateral Cash Flow to the holders of the RBS Debt. This distribution can be through the Escrow Agent. Notwithstanding the foregoing, in the event RBS makes a 1111(b) Election, New REIT shall distribute to RBS an annual amount equal to the amount needed to satisfy that year's obligation under the 1111(b) Note, with any remaining RBS REIT Collateral Cash Flow being distributed to New REIT for distribution to the holders of New REIT's common stock.

**7.7  New REIT Collateral Manager.**  New REIT shall enter into the New REIT Management Agreement with New REIT Collateral Manager and, pursuant to the terms of such agreement, shall retain New REIT Collateral Manager to diligently manage all assets of New REIT that it receives pursuant to the Plan or it otherwise acquires. As set forth in the New REIT Management Agreement, fees shall be payable to the New REIT Collateral Manager on a non-cumulative basis and shall be deducted from the related JPM REIT Collateral Cash Flow before such JPM REIT Collateral Cash Flow is distributed to the holders of the JPM Debt.

## ARTICLE VIII

## PROVISIONS REGARDING VOTING
## AND DISTRIBUTIONS UNDER THE PLAN

**8.1  Voting of Claims and Interests.**  Each holder of record as of the Voting Record Date of an Allowed Claim in an Impaired Class of Claims set forth in Article III hereof shall be entitled to vote separately to accept or reject the Plan with regard to each Impaired Class of Claims as provided in the Procedures Order. If the Debtors or the Liquidation Trust object to a Claim, the Claim becomes a Disputed Claim. The holder of a Disputed Claim is not entitled to vote on the Plan unless the Debtors or such holder of the Disputed Claim obtains an order of the Court estimating the amount of the Disputed Claim for voting purposes. If the Debtors do not object to a Claim prior to the date on which the Disclosure Statement and Ballots are transmitted to holders of Claims or Interests entitled to vote, then the holder of such Claim will be permitted to vote on the Plan in the full amount of the Claim as filed.

**8.2  Elimination of Vacant Classes.**  Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from

the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

8.3    **Nonconsensual Confirmation.**  If any Impaired Class of Claims or Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, then the Debtors reserve the right to amend the Plan in accordance with section 12.1 hereof or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.

8.4    **Distribution to the Liquidation Trustee.**  Subject to section 5.14 hereof, on the day after the Effective Date or as soon thereafter as is practicable, the Liquidation Trustee shall distribute Cash in the amount of $50,000 to himself from the Liquidation Trust Funds in accordance with the terms of the Liquidation Trustee Employee Agreement, which shall constitute an irrevocable payment of the first half of his annual salary, which shall be deemed fully earned even if he is removed during that period.

8.5    **Reserve for Certain Liquidation Trust Expenses**.  Subject to section 5.14 hereof, on the day after the Effective Date or as soon thereafter as is practicable, prior to the establishment of any other Liquidation Trust Reserve, the Liquidation Trustee shall establish and maintain a reserve in the amount of $100,000 related to Liquidation Trust Expenses that constitute working capital, including the potential future or current retention and employment of Professionals needed in connection with (a) the collection and/or enforcement of the Settlement Payments, as well as (b) the prosecution and/or settlement of any other litigation transferred to the Liquidation Trust pursuant to section 5.9 of the Plan.  Upon retention and employment of such Professionals, the Liquidation Trustee shall disburse (as well as replenish) such reserve as appropriate.  This reserve may be part of a larger reserve established for all Liquidation Trust Expenses, including compensation of the Liquidation Trustee and basic operational expenses, both of which expenses may also be reserved for at any time, including on or shortly after the Effective Date.

8.6    **Objections to Claims**.  Subject to the provisions of Article II of the Plan, objections to Claims, including, but not limited to, Administrative Claims and Fee Claims, shall be Filed by the Debtors or the Liquidation Trust (acting through the Liquidation Trustee) and served upon each affected Creditor at any time.

8.7    **Litigation of Claims**.  Subject to Court approval, objections to Claims may be litigated to judgment, settled or withdrawn.

8.8    **Distribution of Objected Claims**.  Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order and such Claim becomes an Allowed Claim, and the applicable holder of such Claim shall not receive interest on its Allowed Claim.

27

**8.9    Reserves for Disputed Class 3 Claims.**  Prior to any distributions to the holders of Allowed Class 3 Claims from Liquidation Trust Funds, if any, the Liquidation Trustee shall establish and maintain reserves out of such distribution for all Disputed Class 3 Claims equal to the Pro Rata share of the Disputed Class 3 Claims, and similar reserves shall be created by Debtors to the extent the Liquidation Trust is not formed.

**8.10    Unclaimed Property.**  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim, Allowed Interest, Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Secured Claim, or any other Claim entitled thereto, such unclaimed property shall be forfeited by such holder and returned to the Liquidation Trust or to the Debtors, as applicable, to be distributed in accordance with this Plan.

**8.11    Withholding Taxes.**  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to determine if such taxes must be withheld by the Liquidation Trust or the Post-Confirmation Debtors.  All Person holding Claims that fail to respond to the Liquidation Trust or the Debtors, as applicable, within sixty (60) days of a request by the Liquidation Trustee (or Debtors' counsel) to provide information necessary to make such determination shall be deemed to have forfeited the right to receive a distribution under the Plan.

**8.12    Fractional Cents or Shares.**  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made or fractional shares of securities issued hereunder.  Whenever any payment of a fraction of a cent or the issuance of a fraction of a share of a security would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent or share.

**8.13    Setoffs.**  Except as otherwise provided for herein with respect to Claims released by the Debtors and their estates pursuant to this Plan and the Confirmation Order, the Liquidation Trustee (or the Debtors to the extent they are making distributions under the Plan) may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever the Debtors or their estate may have against the applicable holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtors or their estates of any Claim they may have against any such holder of Claims.

## ARTICLE IX

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**9.1    Rejection of Unexpired Leases and Executory Contracts.**  Other than as set forth in the Plan or any exhibit or supplement thereto identifying contracts and or leases to be assumed and/or assigned, any and all pre-petition unexpired leases or executory contracts not previously rejected by the Debtors, unless specifically assumed pursuant to orders of the Court prior

to the Confirmation Date or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected by the Debtors on the Confirmation Date.

**9.2    Claims Arising out of Rejection of Unexpired Leases and Executory Contracts.** All proofs of claim with respect to claims arising from the rejection of executory contracts or unexpired leases shall, unless another order of the Court provides for an earlier date, be Filed with the Court within thirty (30) days after the mailing of notice of entry of the Confirmation Order. All proofs of claim with respect to claims arising from the rejection of executory contracts shall be treated as Class 3 Claims for purposes of a distribution pursuant to the Plan, unless and until the party asserting such Claim obtains an order of the Court upon notice to the Liquidation Trust and the Debtors that allows the Claims in another Class under the Plan. Unless otherwise permitted by Final Order, any proof of claim with respect to claims arising from the rejection of executory contracts or leases that is not filed within 30 days after mailing of the notice of entry of Confirmation Order shall automatically be disallowed as a late filed claim, without any action by the Liquidation Trust or the Debtors, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtors, the New REIT Companies or the Liquidation Trust.

**9.3    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

(a) Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease, any monetary defaults arising under each executory contract or unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "Cure Amount") in Cash on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which the Cure Amount has been resolved (either consensually or through judicial decision.).

(b) No later than five (5) days prior to the commencement of the Confirmation Hearing, the Debtors shall file a schedule (the "Cure Schedule") setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed pursuant to section 9.1 of the Plan. Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within twenty (20) days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c) In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the applicable New REIT Company or Liquidation Trust to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that such Debtor (or the applicable New REIT Company or Liquidation Trust, if

applicable) reserves Cash in the amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).

## ARTICLE X

## EFFECTIVENESS OF THE PLAN

**10.1    Conditions Precedent to Effectiveness of the Plan.**  The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived: (i) the Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors; (ii) the Confirmation Order shall have become a Final Order; and (iii) all transactions contemplated by Article VII of the Plan shall be consummated, including issuance of the REIT Opinion.

**10.2    Waiver of Conditions**.  The Debtors may at any time, without notice or authorization of the Court, waive the conditions set forth in section 10.1(ii) above.  The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

**10.3    Effect of Failure of Conditions.**  In the event that the condition specified in section 10.1(ii) of the Plan has not occurred or been waived on or before sixty (60) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Court after motion made by the Debtors or any party in interest and an opportunity for parties in interest to be heard.

## ARTICLE XI

## RETENTION OF JURISDICTION

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Liquidation Trustee or the Post-Confirmation Debtors, as applicable, the Court shall retain jurisdiction as is legally permissible over issues relating to the Plan, including but not limited, to adjudication of Claims pursuant to Sections 2.3, 2.4 and 8.6 hereof.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1    Pre-Confirmation Modification.**  On notice to and with an opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

**12.2    Post-Confirmation Immaterial Modification.**  With the approval of the Court and on notice to and an opportunity to be heard by the United States Trustee, and without notice to all holders of Claims and Interests, the Debtors or Post-Confirmation Debtors may, insofar

30

as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

**12.3    Post-Confirmation Material Modification.** On notice to and with an opportunity to be heard by the United States Trustee, the Plan may be altered or amended after the Confirmation Date by the Debtors or Post-Confirmation Debtors in a manner which, in the opinion of the Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code.

**12.4    Withdrawal or Revocation of the Plan.** The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void.

**12.5    Payment of Statutory Fees.** All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) or by the Liquidation Trustee or Debtors when otherwise due.

**12.6    Role of Committees.** Upon the Effective Date, the appointment and existence of any statutorily appointed committee in the Chapter 11 Cases, such as an official creditors' committee, shall terminate for all purposes and to the extent no such committees exist, no such committee may be subsequently appointed.

**12.7    Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**12.8    Term of Injunctions or Stays.** Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**12.9    Injunction Against Interference With Plan**. Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

**12.10    Releases.**

**(a)**    *Releases by the Debtors.  Except as otherwise provided in this Plan or the Confirmation Order, in consideration for each of the Debtor-Released Party's efforts and contributions to implement the restructuring reflected in the Plan, as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession, shall be deemed to forever have released, waived and discharged all claims, obligations, suits, judgments, damages, demands, debts,*

rights, causes of action and liabilities (other than the rights of the Debtors to enforce this Plan and the contracts, instruments, releases, indentures and other agreement or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the parties released pursuant to this section 12.1(a), the Chapter 11 Cases, this Plan or the Disclosure Statement and that could have been asserted by or on behalf of the Debtors or their estates, whether directly, indirectly, derivatively or in any representative or any other capacity, against any Debtor-Released Party; provided, however, that: (i) that the releases set forth in the section 12.10(a) shall not release any Debtor's claims, rights, or causes of action for money borrowed from or owed to a Debtor by any of its directors, officers or former employees as set forth in such Debtors' books and records; (ii) that the releases set forth in this section 12.10(a) shall not release any Claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or Claim for setoff pursuant to which such Person seeks affirmative relief against a Debtor or any of its officers, directors, or representatives; and (iii) in no event shall anything in this section 12.10(a) be construed as a release of any Person's fraud, gross negligence or willful misconduct for matters with respect to the Debtors and their affiliates.

     **(b)**   *Releases by Holders of Claims and Interests.* *Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Releasing Party, in consideration for the obligations of the Debtors and the other Released Parties under this Plan, their efforts and contributions to implement the restructuring reflected in the Plan, and contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed forever to have released, waived and discharged all claims, demands, debts, rights, causes of actions or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan), including, without limitation, any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors' commencement of the Chapter 11 Cases or as a result of this Plan having been consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, this Plan or the Disclosure Statement against any Released Party.*

     **(c)**   *Entry of the Confirmation Order will constitute the Bankruptcy Court's approval pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 of the releases contained in Sections 12.10 (a) and 12.10(b) of the Plan which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding these releases are (i) in exchange for the good and valuable consideration provided by the Debtors and each of the other Released Parties, representing good faith settlement and compromise of the claims released herein; (ii) in the best interest of the Debtors and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) approved after due notice and opportunity for hearing, and (v) a bar to any assertion by any of the Releasing Parties of any claim released by*

*such Releasing Party against any of the Debtors and the other Released Parties or their respective property.*

**(d)** *Notwithstanding anything to the contrary contained in the Plan, except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under The Employee Retirement Income Security Act of 1974 ("ERISA"), federal securities laws, the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any Non-Debtor Released Party, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceeding against any Non-Debtor Released Party for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under ERISA, federal securities laws, the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any Non-Debtor Released Party.*

**12.11** **Exculpation and Limitation of Liability**. *None of the Exculpated Parties shall have or incur any liability to the Debtors and to any holder of any Claim or Interest for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation the negotiation, drafting, execution and Filing of this Plan, the commencement and conduct of the Chapter 11 Cases, the negotiation, drafting and Filing of the Disclosure Statement, the solicitation of votes for and the pursuit of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the negotiation, promulgation and confirmation of this Plan except fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to duties and responsibilities under this Plan.*

**12.12** **Injunction Related to Releases and Exculpation**. *The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, or derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Sections 12.10 and 12.11 of this Plan.*

**12.13** **Retention of Causes of Action/Reservations of Rights**. Subject to section 12.10 herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or causes of action, rights of setoff, or other legal or equitable defenses (including, for avoidance of doubt, any cause of actions to avoid a transfer under sections 303(c), 544, 547, 548, or 553(b) of the Bankruptcy Code, or any similar state law) that the Debtors had immediately prior to the Effective Date on behalf of the Debtors' estates or of

themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. In connection with objecting to Claims, the Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and the Liquidation Trust (as applicable) shall be similarly entitled to assert them on behalf of the Debtors (or their estates) in connection with any objection to Claims, as applicable. All of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in section 2.1 herein, may be asserted after the Confirmation Date (by the Debtors or the Liquidation Trust, as applicable) to the same extent as if the Chapter 11 Cases had not been commenced.

**12.14  Governing Law.**  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

**12.15  Notices.**  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> If to the Debtors or the Post-Confirmation Debtors:
> Dickstein Shapiro LLP
> 1633 Broadway
> New York, New York 10019
> Attention: Brian E. Goldberg or Shaya M.
> Berger

> If to the Liquidation Trust (only for notices after the Effective Date if there is a Liquidation Trust):
> Dickstein Shapiro LLP
> 1633 Broadway
> New York, New York 10019
> Attention: Brian E. Goldberg or Shaya M.
> Berger

**12.16  Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**12.17  Section 1146 Exemption.**  Pursuant to section 1146 of the Bankruptcy Code, (i) the issuance, transfer or exchange of any security under or in connection with the Plan or (ii) the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or (iii) the revesting, transfer or sale of any real or personal property of the Debtors or Post-Confirmation Debtors pursuant to, in implementation of, or as contemplated by, the Plan, in each case including but not limited to any transactions relating to the New REIT Companies, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, real

estate transfer tax, mortgage recording tax or similar tax or fee or government assessment. State or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without payment of any such tax or governmental assessment.

12.18  **Severability.**  If any term or provision of the Plan is held by the Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option remain, in full force and effect and not be deemed affected. However, the Debtors reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.19  **Headings.**  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

12.20  **Plan Supplement.**  The complete contents of the Plan Supplement shall be filed not later than seven days prior to the Confirmation Hearing and shall include: (i) the Liquidation Trust Agreement; (ii) the Liquidation Trustee Employment Agreement; (iii) the form of the New REIT Management Agreement; (iv) the current total value of the RBS Claim, secured and unsecured (if any); (v) the description of the Sale Assets; (vi) the terms of the sale, assignment or other monetization of the Settlement Payments, to the extent there is an agreement for any such transaction; (vii) the identity of the holders of New REIT Common Stock; (viii) the form of the REIT Opinion; and (ix) any executory contracts being assumed and/or assigned.

## ARTICLE XIII

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of the Plan pursuant to sections 1129(a) and (b) of the Bankruptcy Code.

DOCSNY-452461v2

Dated: February 17, 2011

Respectfully submitted,

By: /s/ Lawrence Shelley
    Lawrence Shelley as authorized
    signatory for Debtors Petra Fund REIT
    Corp. and Petra Offshore Fund, L.P.

COUNSEL:

/s/ Arnold Gulkowitz
Arnold Gulkowitz
Brian E. Goldberg
Shaya M. Berger
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York  10019
(212) 277-6500

Counsel for the Debtors and Debtors in
Possession

DOCSNY-452461v2